UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, AND ANNUITY FUNDS
AND THE TRUSTEES OF THE LOCAL
1010 APPRENTICESHIP, SKILL IMPROVEMENT
AND TRAINING FUND,

        Plaintiffs,      REPORT AND
                   RECOMMENDATION
 -against-             22 CV 5047 (DG)(RML)

ATLANTIC STEEL SOLUTIONS, LLC,

        Defendant.
----------------------------------------------------------------X
LEVY, United States Magistrate Judge:

   By order dated December 6, 2022, the Honorable Diane Gujarati, United States District Judge, referred plaintiffs' motion for default judgment to the Honorable Roanne L. Mann, United States Magistrate Judge, for report and recommendation. This action was reassigned to me on January 9, 2023. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted in part and denied in part.

## BACKGROUND AND FACTS

   Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill Improvement and Training Fund ("plaintiffs" or "the Funds"), brought this action on August 25, 2022, asserting claims under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect delinquent employer contributions to employee benefit plans. (Complaint, dated Aug. 25, 2022 ("Compl."),

Dkt. No. 1, ¶ 1.) The Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3). (Compl. ¶ 4.) Defendant Atlantic Steel Solutions, LLC ("defendant" or "Atlantic Steel") is a foreign business corporation organized under the laws of New Jersey, with its principal place of business at 74 Railroad Avenue, Paterson, New Jersey, and is engaged in the construction business. (Id. ¶ 5.) At all relevant times, defendant was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. (Id.)

In or around January 12, 2018, Atlantic Steel executed a Project Labor Agreement Letter of Assent ("PLA LOA") for the New York City Housing Authority ("NYCHA") project known as the Jacob Riis Houses. (Declaration of Keith Loscalzo, dated Nov. 22, 2022 ("Loscalzo Decl."), Dkt. No. 10, ¶ 5.) The PLA LOA bound Atlantic Steel to the Project Labor Agreement Covering Specified Renovation & Rehabilitation of New York City Housing Authority Buildings and Structures (the "NYCHA PLA"). (Id. ¶ 6.) The NYCHA PLA covered the period of January 1, 2015 through March 18, 2022. (Id. ¶ 7.)

Plaintiffs allege that, through the NYCHA PLA, defendant became bound by a collective bargaining agreement (the "CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 ("the "Union"). (Compl. ¶ 6; Loscalzo Decl. ¶ 9; see also Collective Bargaining Agreement, annexed as Ex. C to the Loscalzo Decl., Dkt. No. 10-3.) The CBA requires defendant to pay contributions to the Funds and related entities on behalf of which the

Funds act as collection agents,[1] based on the rates specified in the CBA in connection with all work performed by its employees within the trade and geographical jurisdiction of the Union ("Covered Work"). (Compl. ¶ 10; see also Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated Dec. 5, 2022 ("Pls.' Mem."), Dkt. No. 15, at 2; Loscalzo Decl. ¶ 18; Collective Bargaining Agreements, annexed as Exs. C, D, and E to the Loscalzo Decl., Dkt. Nos. 10-1, 10-2, and 10-3, Art. IX.) The CBA requires employers to submit all benefit contributions, union assessments, and dues check-offs to the Funds per a "one-check" system. (Loscalzo Decl. ¶ 19.) Additionally, pursuant to the CBA and the underlying trust agreements, defendant is bound by the terms of a Policy for Collection of Delinquent Fringe

---

[1] Plaintiffs seek to recover unpaid union assessments despite the fact that the Union is not a named plaintiff in this action, as well as unpaid contributions to benefit funds that are not parties to the action. Plaintiffs assert that trustees of multiemployer benefit funds like plaintiffs have been allowed to recover amounts owed to non-named benefit funds and unions where the trustees are designated as collection agents of such funds and unions and where the submission of contributions to the non-party entities were made pursuant to a one-check agreement. (Supplemental Declaration of Adrianna R. Grancio, filed Mar. 14, 2023 ("Supp. Decl."), Dkt. No. 19, ¶ 43 (citing Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Kore Contr. Corp., No. 21 CV 3853, 2022 U.S. Dist. LEXIS 63487, *18 (E.D.N.Y. Apr. 5, 2022) (awarding amounts on default owed to non-named funds and union where the plaintiffs' complaint pleaded that employers were required to remit "contributions, union assessments, and dues check-offs to the Funds per a 'one-check' system"); Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19 CV 2312, 2020 U.S. Dist. LEXIS 39542, at *2 (E.D.N.Y. Mar. 5, 2020) (awarding amounts on default where complaint pleaded that amounts owed to non-named funds and union were collected by plaintiff pursuant to one-check agreement), report and recommendation adopted, 2020 U.S. Dist. LEXIS 59773 (E.D.N.Y. Apr. 3, 2020); Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the I.U.O.E. Loc. 15, 15A, 15C & 15D v. Iron Inc., No. 15 CV 2675, 2016 U.S. Dist. LEXIS 20068, at *3 (E.D.N.Y. Feb. 17, 2016) (awarding amounts on default owed to non-named entities where plaintiffs pleaded in their complaint that they were the collection agents of such entities)).) Additionally, the CBA provides for the remittance of contributions to all funds via the one-check system and the CBA does not designate any other entity as the collection agent for the Union and non-named funds. (Supp. Decl. ¶¶ 45, 46.) Therefore, I find that plaintiffs, as collection agents of the Union and non-named funds, have standing to recover amounts owed to them under the CBA.

Benefit Contributions ("Collection Policy").  (Compl. ¶ 9; see also Declaration of Joseph Montelle, dated Nov. 21, 2022 ("Montelle Decl."), Dkt. No. 11, ¶ 7; Collection Policy, annexed as Ex. G to the Montelle Decl., Dkt. No. 11-2.)

Plaintiffs allege that defendant failed to report the number of hours of Covered Work performed by each of its employees for the period of June 2021 through June 2022. (Compl. ¶ 21; Montelle Decl. ¶ 13.)  Accordingly, plaintiffs assert that Atlantic Steel owes the Funds contributions in an unknown amount for that period to be determined in accordance with the "Estimation Protocol" set forth in the Collection Policy.  (Compl. ¶ 21; Montelle Decl. ¶ 13; see also Collection Policy.)

To date, the court has received no communication from defendant.  Accordingly, the Clerk of the Court entered a certificate of default against defendant.  (Certificate of Default, dated Sept. 29, 2022, Dkt. No. 8.)  Plaintiffs filed their motion for default judgment on December 5, 2022.  (Motion for Default Judgment, dated Dec. 5, 2022, Dkt. No. 9.)  By order dated February 14, 2023, I directed plaintiffs to supplement their default submissions with additional information within thirty days.  (See Order, dated Feb. 14, 2023, Dkt. No. 17.)  Plaintiffs did so on March 14, 2023.  (See Supplemental Declaration of Adrianna R. Grancio, Esq., filed Mar. 14, 2023 ("Supp. Decl."), Dkt. No. 19.)

## DISCUSSION

### I.     Liability

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).

4

Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. Id. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Here, plaintiffs have filed an affidavit of a licensed process server attesting that defendant was served by personal service of the summons and complaint on Suelie Greenwood, a managing agent of Atlantic Steel, pursuant to Federal Rule of Civil Procedure 4(h)(1)(b). (See Affidavit of Service of Joel Sanchez, sworn to Sept. 1, 2022 ("Sanchez Aff."), Dkt No. 6.)[2] Plaintiffs have also demonstrated that they served the Motion for Default Judgment and accompanying submissions on defendant in compliance with Local Rule 55.2(c). (See Declaration of Service of Adrianna R. Grancio, Esq., dated Dec. 6, 2022, Dkt. No. 16.) Defendant has failed to appear, respond to the complaint, or respond to plaintiffs' application for default. The grounds for default are therefore established and I recommend entering judgment by default.

        A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). In civil actions, when a party fails to appear after having been given notice,

---

[2] Plaintiffs were directed to supplement the process server's affidavit setting forth the basis for the process server's knowledge that Ms. Greenwood was a managing agent. (See Order, dated Feb. 14, 2023, Dkt. No. 17.) Plaintiffs' supplemental declaration indicates that Ms. Greenwood identified herself as the office manager of defendant to the process server at the location known to be the address of defendant. (Supp. Decl. ¶ 5.) Accordingly, plaintiffs effectuated proper service of the pleadings on defendant. See Gesualdi v. Reid, No. 19 CV 4132, 2021 WL 8316386, at *5 (E.D.N.Y. Aug. 12, 2021) (finding that service was acceptable where the process server served the summons and complaint at defendant's business address to a person who identified herself as defendant's office manager and was willing to accept service of the legal documents).

the court normally has justification for entering default. Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). However, upon default, allegations pertaining to damages are not deemed admitted. Greyhound, 973 F.2d at 158. The movant must establish its entitlement to the recovery of damages. Id. The court may conduct a hearing or rely on affidavits or other documentary evidence to determine damages. See FED. R. CIV. P. 55(b)(2).

Under section 515 of ERISA, defendant is required to make contributions to the Funds in accordance with the terms of the CBA. See 29 U.S.C. § 1145. In an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan as:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Id. § 1132(g)(2). In addition, the LMRA authorizes federal lawsuits "for violation of contracts between an employer and labor organization representing employees in an industry affecting commerce." Id. § 185(a). Defendant's failure to remit dues to the Union and contributions to the Funds is in violation of the CBA and underlying trust agreements, and plaintiffs are therefore entitled to damages on behalf of the Funds and the Union as a matter of contract law and under Section 301 of the LMRA. See Brown v. C. Volante Corp., 194 F.3d 351, 354 (2d Cir. 1999) (holding that employee benefit plans are permitted to bring suit under Section 301 of the LMRA to collect delinquent contributions, as well as interest).

In light of the foregoing, I respectfully recommend granting default judgment on defendant's liability under ERISA and the LMRA.

## II. **Damages**

Based on the Estimation Protocol provided for in the Collection Policy and the results of an audit of Atlantic Steel, plaintiffs seek: (1) delinquent contributions and unpaid union dues in the amount of $188,783.08; (2) union assessments and dues check-offs in the amount of $7,546.02; (3) interest thereon totaling $12,658.49; (4) liquidated damages on the delinquent contributions in the amount of $18,878.31; (5) attorney's fees and costs in the amount of $3,375.18; and (6) post-judgment interest. (Pls.' Mem. at 1-4, 9-14; Compl. ¶ 21; see also Declaration of Philip Wilson, dated Nov. 28, 2022 ("Wilson Decl."), Dkt. No. 13, ¶ 9.)

Plaintiffs originally sought unpaid contributions and dues for the period of June 2021 through June 2022. (See Compl. ¶¶ 21, 27, 32.) However, plaintiffs now assert that they have not received reports from Atlantic Steel through September 2022 and seek unpaid contributions and dues for the period of June 2021 through September 2022. (Pls.' Mem. at 4.) Although the NYCHA PLA only covered the period of January 1, 2015 through March 18, 2022 at the time this action was commenced, plaintiffs believe that the NYCHA PLA was extended beyond March 18, 2022 and that defendant remains bound to a CBA with the Union through June 30, 2024. (Supp. Decl. ¶¶ 10, 11, 16-18.) Plaintiffs have submitted a request to NYCHA for a copy of the memorandum of agreement extending the term of the NYCHA PLA beyond March 18, 2022. (See Freedom of Information Law Request, attached as Ex. 3 to the Supp. Decl., dated Mar. 3, 2023, Dkt. No. 19-3.) The response to this request, if any, has not been submitted to the court.

7

Nevertheless, plaintiffs assert that "by way of its execution of the [Project Labor Agreement Letter of Assent] and being bound to the NYCHA PLA covering January 1, 2015 through March 18, 2022, Defendant became bound to the Independent Agreements covering. . . July 1, 2021 through June 30, 2024[.]" (Supp. Decl. ¶ 16; see also Loscalzo Decl. ¶¶ 9-13.) The 2021-2024 CBA indicates that the agreement "shall continue in effect until and including June 30, 2024 and each year thereafter unless . . . written notice of termination or proposed changes shall have been served by either party on the other party." (Agreement Between Laborers Local Union 1010 and The Employer July 1, 2021 – June 30, 2024, attached as Ex. D to the Loscalzo Decl., Dkt. No. 10-5.) No notice to terminate the CBA has been served by either party. (See Supp. Decl. ¶ 17; Loscalzo Decl. ¶ 13.) Thus, plaintiffs assert that, even if the NYCHA PLA expired on March 18, 2022, the term of the CBA is ongoing, and defendant remains bound and liable for contributions through September 2022. (Supp. Decl. ¶ 19); see also Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. M. Ali Const., Inc., No. 16 CV 351, 2017 LEXIS 20244, at *2-3 (E.D.N.Y. Feb. 10, 2017) (awarding contributions for December 2014 and January 2015 as the CBA expired June 30, 2015 despite the PLA expiring June 30, 2014 because the PLA applied to all bids executed under its terms "even if [the work was] not completed by the expiration of this agreement").

The CBA requires defendant to submit reports detailing the number of hours of work performed by its employees and the corresponding benefit contributions and union assessments. (Pls.' Mem. at 2; Loscalzo Decl. ¶¶ 5-17.) Plaintiffs retain Zenith American Solutions Inc. ("Zenith") as a third-party administrator of the Funds to monitor the payment of benefit contributions and union assessments. (Pls.' Mem. at 3; Wilson Decl. ¶¶ 6-8.) In the

8

course of monitoring remittance reports, Zenith determined that Atlantic Steel failed to submit reports detailing the number of hours of Covered Work performed by its employees for the period of June 2021 to September 2022. (Pls.' Mem. at 3-4; Montelle Decl. ¶¶ 13, 14; Wilson Decl. ¶ 9.)

Because Atlantic Steel never submitted reports detailing the number of hours of Covered Work performed by its employees or corresponding contribution payments to the Funds, plaintiffs rely on the results of an audit of Atlantic Steel covering the period of July 1, 2019 through December 31, 2020 ("Audit Report"). (See Montelle Decl. ¶ 15 n.1.) Plaintiffs use remittance reports generated by the audit to generate delinquency estimates, as these reports reflect the actual amounts due to the Funds as determined by the auditors' examination of Atlantic Steel's payroll records. (Id.) This methodology was recently accepted in a case involving the same parties. See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC, No. 21 CV 2518, 2022 WL 4642735, at *5 (E.D.N.Y. Sept. 15, 2022), report and recommendation adopted, 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), supplemented, 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022) (accepting the use of the 2019-2020 Audit Report to calculate delinquent contributions but directing plaintiffs to recalculate and supplement their damages submission due to a calculation error).

Frustratingly, however, to calculate their damages, plaintiffs rely on the same Audit Report that was previously found to contain several significant errors. (See Audit Report, filed Dec. 5, 2022, Dkt. No. 12-1); see also id. ("This Court has reviewed the Audit Report . . . and has identified a number of significant errors that prevent this Court from accurately recalculating and recommending an award of damages to plaintiffs at this time, except for audit costs and attorney's fees."). This court similarly notes the error in the Audit Report in the

9

calculation of the delinquent contributions resulting in a discrepancy of $19.38.  As a result of this error, all calculations stemming from the Audit Report (*i.e.*, delinquent contributions, interest, liquidated damages, estimated delinquent contributions, estimated interest, and estimated liquidated damages) are likely incorrect.[3]  Due to plaintiffs' miscalculations, I respectfully recommend denying plaintiffs' request for delinquent contributions, union assessments, interest on unpaid contributions and dues, and liquidated damages.  See Atl. Steel Sols., LLC, 2022 WL 4642735, at *5 (citing Trs. of the Loc. 7 Tile Indus. Welfare Fund et al. v. Castle Stone and Tile, Inc., No. 17 CV 3187, 2022 WL 2063267, at *15 (E.D.N.Y. June 8, 2002) (as the court has warned plaintiffs' counsel's firm in the past, "this Court will not recalculate and reconstruct damages based on what evidence is presented, but instead disallow recovery as a whole.  It is not the Court's job nor duty to perform such calculations in the first instance, rather the Court is to insure that such calculations presented are arithmetically sound and supported, both factually and legally.")).  I further recommend providing plaintiffs with an opportunity to recalculate and supplement their damages submission.

---

[3] Specifically, in the Audit Report for the period ending November 30, 2019, the auditor found employees worked **337** hours.  However, when calculating the unpaid contributions for the "(4) Pavers Annuity Fund" category, the auditor used **339.50** hours, instead of **337** hours.  (See Audit Report at 8.)  For this category, the auditor found a delinquent contribution of **$2,631.13** (**339.50** hours × $7.75 (contribution rate)) instead of **$2,611.75** (337.00 hours × $7.75) resulting in a difference of **$19.38**.  (See id.)  Based on this recalculation, this court estimates that the total unpaid contributions, plus union assessments/dues check-offs for the period ending November 30, 2019, is approximately **$15,235.77** ($15,356.25 - $19.38 - $101.10 (subtracted because the Funds do not seek contributions owed to the Heavy Construction Industry Fund)), not **$15,255.15**.  As found in the prior case involving these parties, "as a result of the inaccurate Audit Report and the error with the amount of the November 2019 unpaid contributions, plaintiffs miscalculated the amount of interest and liquidated damages."  Atl. Steel Sols., LLC, 2022 WL 4642735, at *6.

10

### III.     Attorney's Fees and Costs

Plaintiffs seek an award of attorney's fees and costs. (Pls.' Mem. at 11-13.) As the prevailing party, plaintiffs are entitled to an award of attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2)(D). Plaintiffs' counsel seeks $2,875 in attorney's fees and $500.18 in costs. (Id. at 12, 13; Declaration of Adrianna R. Grancio, Esq., dated Dec. 5, 2022 ("Grancio Decl."), Dkt. No. 14, ¶ 16.)

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). In performing this analysis, the court has "considerable discretion." Id. at 190. Claims for attorney's fees in the Second Circuit generally must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

To determine what constitutes a reasonable hourly rate, this court looks to the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York. Loc. No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr. Fund v. Crops Design Corp., No. 12 CV 4218, 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013). In this district, the prevailing hourly rates are generally "$200 to $450 for partners in law firms, $200 to $325 for senior associates, [and] $100 to $200 for junior associates . . . ." Noboa v. Quality Homes USA, Inc., No. 21 CV 7134, 2023 WL 35030, at *2 (E.D.N.Y. Jan. 4, 2023) (citation and quotation marks omitted); see also Perrone v. Amato, No. 09 CV 316, 2022 WL

11

595187, at *3 (E.D.N.Y. Feb. 27, 2022) (prevailing hourly rates "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience."). "Courts have also recognized 'the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of the typical ranges.'" Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 20 CV 1980, 2021 WL 7908024, at *6 (E.D.N.Y. Jan. 4, 2021) (quoting Gesualdi v. Lubco Transp. Inc., No. 15 CV 6727, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017), report and recommendation adopted, 2017 WL 943937 (E.D.N.Y. Mar. 9, 2017)).

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by counsel. (Billing Records, annexed as Ex. Q to the Grancio Decl., Dkt. No. 14-4.) Plaintiffs request a rate of $290 per hour for the 9.2 hours expended by Adrianna R. Gancio, Esq. (Grancio Decl. ¶ 10; Billing Records.) Additionally, plaintiffs request a rate of $115 for the 1.8 hours expended by the legal assistants on this case.[4] (Id. ¶ 11.) Ms. Grancio, an associate at Virginia & Ambinder, LLP, has been practicing law since 2016 and has "handled the prosecution of numerous ERISA collection actions." (Grancio Decl. ¶ 10.) I find the requested rate of $290 for Ms. Grancio to be reasonable considering the prevailing rates in this district for attorneys with comparable experience. See, e.g., Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc., No. 21 CV 4076, 2022 WL 17820119, at *11 (E.D.N.Y. Aug. 10, 2022) (finding a requested hourly rate of $285 reasonable for Ms. Grancio); Trs. of Loc. 813 Pension Trust Fund v. Rizzo

---

[4] The legal assistants on this case were Eva Keating ("EK" in the accompanying billing records), and Abigail Frankel ("AF" in the accompanying billing records). (Grancio Decl. ¶ 11 n.1; Billing Records).

12

Env't Servs. Corp., No. 19 CV 6622, 2020 WL 7249289, at *708 (E.D.N.Y. Oct. 31, 2020) (approving hourly rate of $325 for an experienced associate in ERISA default action), report and recommendation adopted, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a rate of $280 per hour reasonable for an associate in ERISA litigation).

I also find the requested rate of $115 for the work of the legal assistants to be reasonable. See, e.g., Finkel v. JCF Elec., Inc., No. 21 CV 3161, 2022 WL 3682834, at *4 (E.D.N.Y. Aug. 25, 2022) (finding $120 to be a reasonably hourly rate for the work of legal assistants); Finkel v. Firealarm Elec. Corp., No. 21 CV 3802, 2022 WL 1407239, at *12 (E.D.N.Y. Feb. 11, 2022) (approving a rate of $120 per hour for the work of legal assistants in an ERISA case).

Turning next to the reasonableness of time expended, I find that it was reasonable for counsel to devote eleven hours to this case. See, e.g., Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp., No. 20 CV 1832, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022) (finding that 39.4 hours billed in a comparable case was "within the range of reasonable hours expended in similar ERISA cases involving default judgment"); Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19 CV 2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), report and recommendation adopted, No. 19 CV 2312, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020) (holding that 45.30 hours in a similar case was not excessive, redundant, or unnecessary). Therefore, I respectfully recommend that plaintiff be awarded $2,875 in attorney's fees.

Plaintiffs also seek costs in the amount of $500.18. (Pls.' Mem. at 13; Grancio Decl. ¶ 15; Billing Records.) 29 U.S.C. § 1132(g)(2)(D) directs a court to award reasonable costs when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2)(D). A plaintiff that prevails in an action under ERISA is entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Loc. 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). In this case, costs include $402 for the filing fee, $75 for process server fees, and $23.18 for postage. (See Pls.' Mem. at 13; Billing Records.) I find that the requested costs are reasonable, and therefore recommend that plaintiffs be awarded $500.18 in costs.

**IV.    Post-Judgment Interest**

Finally, plaintiffs request and are entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." Id. Therefore, I respectfully recommend that plaintiff be awarded statutory post-judgment interest. See Fermin

14

v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015) (finding that post-judgment interest is mandatory).

## CONCLUSION

For the reasons explained above, I respectfully recommend (1) granting plaintiffs' motion for default judgment against defendant on plaintiffs' ERISA and LMRA claims; (2) awarding plaintiffs $2,875 in attorney's fees and $500.18 in costs; (3) awarding plaintiffs post-judgment interest; (4) denying plaintiffs' request for estimated delinquent contributions and union assessments; (5) denying interest on estimated delinquent contributions; and (6) denying liquidated damages. I further recommend granting plaintiffs an opportunity to submit supplemental briefing on the issue of damages that addresses the discrepancies in the Audit Report. Any objection to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. Failure to file objections in a timely manner may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       May 16, 2023